UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ESCOBEDO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PAULA LIMON dba COSTA DORADA; REEDLEY PROPERTIES, L.P.,<br><br>　　　　Defendants. | Case No. 1:25-cv-00428-BAM<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS DECLINING SUPPLEMENTAL JURISDICTION AND DISMISSING STATE LAW CLAIMS WITHOUT PREJUDICE<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Jose Escobedo initiated this action on April 11, 2025, against Defendants Paula Limon dba Costa Dorada and Reedley Properties, L.P. (Doc. 1.) The complaint alleges violations of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.; the California Unruh Act, California Civil Code § 51 et seq.; and California Health and Safety Code §§ 19955, 19959. (*Id.*) Plaintiff seeks an award of statutory damages, costs of suit, attorneys' fees, litigation expenses, injunctive or preventative relief, declaratory relief, and interest at the legal rate from the date of filing the complaint. (*Id.* at 9.) Defendants have not yet appeared in this action.

///

On April 30, 2025, the Court ordered Plaintiff to show cause why the Court should not decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act and California Health & Safety Code claims for the reasons stated in *Vo v. Choi*, 49 F.4th 1167 (9th Cir. 2022) and *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021). (Doc. 5.) Plaintiff filed a response on May 14, 2025. (Doc. 6.) For the reasons discussed below, the Court recommends declining supplemental jurisdiction over Plaintiff's state law construction-related accessibility claims and dismissing those claims without prejudice.

**I.      LEGAL STANDARD FOR SUPPLEMENTAL JURISDICTION**

In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "economy, convenience, fairness, and comity" that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("*Gibbs*"). In *Gibbs*, the Supreme Court noted that it "has consistently been recognized that pendent jurisdiction

is a doctrine of discretion, not of plaintiff's right." *Gibbs,* 383 U.S. at 726. The justification for pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Id.* The Court emphasized that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.*

District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago*, 522 U.S. at 173. The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Cohill*, 484 U.S. at 350).

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-(3), *San Pedro Hotel Co. v. City of Los* Angeles, 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances." *Executive Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994); *Vo*, 49 F.4th at 1169-1170 ("a district court must: (1) sufficiently explain 'why the circumstances of the case are exceptional' under § 1367(c)(4); and (2) show that 'the balance of the *Gibbs* values provides compelling reasons for declining jurisdiction in such circumstances.'"). According to the Ninth Circuit, this "inquiry is not particularly burdensome." *Executive Software N. Am. Inc*, 24 F.3d at 1558*; Vo*, 49 F.4th at 1171. When declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), "the court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying *Gibbs* values are best

3

served by declining jurisdiction in the particular case (the compelling reasons)." *Executive Software N. Am. Inc*, 24 F.3d at 1558.

**II.     DISCUSSION**

This Court concludes, as have numerous courts before it, the circumstances here are exceptional. *See*, *e.g.*, *Garcia v. Maciel*, No. 21-cv-03743-JCS, 2022 WL 395316, at *2 (N.D. Cal. Feb. 9, 2022) (collecting cases). The Ninth Circuit has held that a district court properly declined supplemental jurisdiction in a joint Unruh Act and ADA case based upon the heightened pleading requirements California imposes upon high-frequency litigants. *Vo*, 49 F.4th at 1174. The "high-frequency litigants" subject to those heightened pleading requirements are defined as:

> A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.

Cal. Civ. Proc. Code § 425.55(b)(1). The definition of "high-frequency litigant" also extends to attorneys. *See* Cal. Civ. Proc. Code § 425.55(b)(2). "High-frequency litigants" are subject to a special filing fee and further heightened pleading requirements. *See* Cal. Gov. Code § 70616.5; Cal. Civ. Proc. Code § 425.50(a)(4)(A). These heightened pleading requirements apply to actions alleging a "construction-related accessibility claim," which California law defines as "any civil claim in a civil action with respect to a place of public accommodation, including but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard." Cal. Civ. Code § 55.52(a)(1). Plaintiff's claims under Cal. Health & Safety Code §§ 19955 and 19959 are "construction-related accessibility claims" that are subject to the same pleading and filing requirements as Plaintiff's Unruh Act claim. *See Gilbert v. Singh*, No. 1:21-cv-01338-AWI-HBK, 2023 WL 2239335, at *2 (E.D. Cal. Feb. 27, 2023).

In response to the show cause order, Plaintiff acknowledges that he would be considered a high-frequency litigant under California law, as he has filed more than ten construction-related accessibility claims in the twelve months preceding the filing of the instant action. (Doc. 6 at 2, Doc. 6-1, Declaration of Jose Escobedo ¶ 2.) Indeed, as noted in the show cause order, "A review

4

1  of Plaintiff Escobedo's prior cases in this district reveals that he has filed at least ten (10)
2  construction-related accessibility cases in this district within the 12-months period immediately
3  preceding the filing of this action on April 11, 2025." (Doc. 5 at 3.)  Counsel for Plaintiff states
4  in her declaration that she does not qualify as a high-frequency litigant. (Doc. 6-1, Declaration of
5  Tanya E. Moore ¶ 2.)

6  Even if Plaintiff or counsel were not a high-frequency litigant, the Ninth Circuit has held
7  that district courts need not adjudicate this threshold matter.  Forcing the district court to
8  determine if Plaintiff or counsel is a high-frequency litigant would itself run afoul of the *Gibbs*
9  values—especially comity.  *Accord Brooke v. Sarodia Suncity LLC*, No. ED CV-22-1374 JGB
10 SPX, 2022 WL 17363913, at *4 (C.D. Cal. Nov. 3, 2022), citing *Vo*, 49 F.4th at 1173.  As *Gibbs*
11 explains, "[n]eedless decisions of state law should be avoided both as a matter of comity and to
12 promote justice between the parties, by procuring for them a surer-footed reading of applicable
13 law" by the state courts.  *Vo*, 49 F.4th at 1173–74, citing *Gibbs*, 383 U.S. at 726.  If the federal
14 district court is required to adjudicate these threshold matters, it will "deprive the state courts of
15 their critical role in effectuating the policies underlying those reforms."  *Id.*, citing *Arroyo*, 19
16 F.4th at 1213.

17 If this Court were to exercise supplemental jurisdiction over Plaintiff's Unruh Act and
18 Health & Safety Code claims, then the "distinctive configuration of California-law rules—which
19 pair a damages remedy with special procedural requirements aimed at limiting suits by high-
20 frequency litigants—would be rendered ineffectual." *See Arroyo,* 19 F.4th at 1211–12.  "By
21 enacting restrictions on the filing of construction-related accessibility claims, California has
22 expressed a desire to limit the financial burdens California's businesses may face for claims for
23 statutory damages under the Unruh Act. Plaintiffs who file these actions in federal court evade
24 these limits and pursue state law damages in a manner inconsistent with the state law's
25 requirements." *Id.* at 1206-07, 1209.  It is not, under the *Gibbs* factors, "fair" to defendants that a
26 plaintiff may pursue construction-related accessibility claims in this Court while evading the
27 limitations California state law has imposed on such claims.  In addition, to allow federal courts
28 to become an "escape hatch" for plaintiffs is also an affront to the comity between federal and

1  state courts. *Vo*, 49 F.4th at 1169 (affirming the district court holding that allowing federal courts
2  to be an 'escape hatch' for plaintiffs seeking to avoid the heightened requirements would be an
3  "affront to the comity between federal and state courts").

4        Moreover, permitting high-frequency litigants to evade California's limitations on
5  construction-related accessibility claims places tremendous strain on the federal courts.  Plaintiff
6  Escobedo has filed more than 10 construction-accessibility cases in this district within the 12-
7  month period immediately preceding the filing of this action.  (Doc. 6 at 2, Doc. 6-2 ¶ 2.)  The
8  multiple filings suggest that it is precisely because the federal courts have not adopted
9  California's limitations on such claims that federal courts have become the preferred forum for
10  such claims.  *See generally Garibay v. Rodriguez*, No. EDCV 18-9187 PA (AFMx), 2019 WL
11  5204294, at *4 (C.D. Cal. 2019) ("Indeed, those reasons, if true at all, do not explain why nearly
12  9 times more construction-related accessibility actions are being filed in the Central District in
13  2019 than were filed in 2013.")  Permitting federal courts "to become an escape hatch" to pursue
14  such claims offends the comity between state and federal courts.  Declining to exercise
15  supplemental jurisdiction over the state law claims early in the litigation preserves federal judicial
16  resources for the consideration of federal claims, while still allowing plaintiffs to pursue their
17  state law claims in state court.  *See e.g.*, *Brooke*, 2022 WL 17363913, at *5 ("Continuing to
18  exercise supplemental jurisdiction in these extraordinary circumstances would unnecessarily force
19  this Court to expend resources to resolve state law claims for relatively modest statutory damages
20  and attorneys' fees even after the federal claim is moot.").

21        Plaintiff Escobedo argues that declining supplemental jurisdiction and litigating his claims
22  in separate forums would be duplicative and increase burdens.  (Doc. 6 at 2-3.)  However, the
23  Court finds that fairness favors declining jurisdiction because Plaintiff can pursue identical
24  remedies in state court.  Exercising the Court's discretion to decline supplemental jurisdiction
25  does not deprive Plaintiff of any remedies. Indeed, Plaintiff's ADA claim for injunctive relief will
26  remain pending in this Court.  Accordingly, the Court concludes that California's enactment of
27  laws restricting construction-related accessibility claims, combined with the burden the ever-
28  increasing number of such cases poses to the federal courts, presents "exceptional circumstances"

and "compelling reasons" that justify the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act and Health & Safety Code claims under 28 U.S.C. § 1367(c)(4). *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) (relying on *Hanna v. Plummer*, 380 U.S. 460, 467-68 (1965), for the proposition that federal courts are permitted to decline supplemental jurisdiction to discourage improper forum-shopping, such as ADA plaintiffs' "use [of] federal court as an end-around to California's pleading requirements"). Moreover, the Court sees no prejudice in requiring Plaintiff Escobedo's state-law claims be heard in state court. *See Garibay*, 2019 WL 5204294, at *6 ("[D]eclin[ing] supplemental jurisdiction does not deprive plaintiff of any remedies. Nor does it allow an ADA claim for injunctive relief to go unaddressed."). For these reasons, it will be recommended that the district court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act and Health & Safety Code construction-related accessibility claims and that any such claims be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(4).

### III. CONCLUSION AND RECOMMENDATION

The Clerk of the Court is DIRECTED to randomly assign a district judge to this action. Additionally, for the reasons stated, it is HEREBY RECOMMENDED as follows:

1. The Court decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act and Health & Safety Code construction-related accessibility claims; and
2. Plaintiff's Unruh Act and Health & Safety Code construction-related accessibility claims be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(4).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the

specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 15, 2025**                    /s/ *Barbara A. McAuliffe*
                                                              UNITED STATES MAGISTRATE JUDGE